IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL POALILLO | : | CIVIL ACTION |
| | : | |
| v. | : | No.: 08-5819 |
| | : | |
| SPECIALTY FLOORINGS SYSTEMS, INC. | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                                           **August 5, 2009**

Michael Poalillo asserts his former employer, Specialty Flooring Systems, Inc., terminated his employment based upon age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA).  Because there are no material facts in dispute and Poalillo cannot show Specialty Flooring's proffered legitimate reasons for his termination are a pretext for age discrimination, the Court will grant Specialty Flooring's motion for summary judgment.

**FACTS**

Poalillo began working for Specialty Flooring on July 5, 2005, at the age of 51.  Poalillo was recruited, hired, and immediately supervised by Marc Antonucci, president and chief executive officer of Specialty Flooring.  Specialty Flooring sells and installs high-end flooring products, primarily to commercial consumers.  Poalillo held the position of Division Manager for Specialty Flooring's Philadelphia regional office his entire tenure and was responsible for sales, bidding, and project management.  In January 2006, Specialty Flooring hired Byron Keeble, age 26, to work as an Estimator under Poalillo.

Specialty Flooring tracks sales and profitability figures by region and by employee. Employees are eligible for commission payments once their profitability levels exceed 18%. During the first six months of Poalillo's employment, Antonucci worked closely with Poalillo in handling sales and operations. After that initial six months, sales figures for the Philadelphia region stagnated and were substantially lower than those for other regions. During the first six months of 2006, Keeble, not Poalillo, closed the largest contract for the Philadelphia region.[1] Poalillo's job profitability was also lower than that of other employees. For 2006, Poalillo's average sales profitability margin was 17.09%, and he was the only employee who did not exceed the 18% profit margin necessary to earn commission. The average profit margin for other Specialty Flooring employees was near 30%.

On September 27, 2006, Antonucci received a letter, via e-mail, from Jeremy Daross of Haverstick-Bosworth. Haverstick-Bosworth was the construction manager for a project in which Merck was the client. At the time, Merck was one of Specialty Flooring's most important clients. In his letter, Daross listed several specific complaints about Poalillo's management of the Merck project. Daross noted several expensive installation mistakes which had been made under Poalillo's

---

[1] Poalillo asserts Keeble told him Antonucci was coaching Keeble on how to take credit for Poalillo's sales. Poalillo must produce "affirmative evidence" to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A bald assertion, unsupported by evidence, cannot overcome a properly supported motion for summary judgment." *Hodson v. Alpine Manor, Inc.*, 512 F. Supp. 2d 373, 384 (W.D. Pa. 2007) (citation and internal quotation marks omitted). In this case, Poalillo neither deposed Keeble nor procured an affidavit from Keeble attesting to any attempts by Antonucci to give Keeble credit for Poalillo's efforts. Furthermore, Keeble's alleged statements are hearsay. "[H]earsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that would be admissible at trial." *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (citation and internal quotation marks omitted). Poalillo's assertions alone cannot create a question of material fact sufficient to defeat a summary judgment motion.

supervision and complained of Poalillo's failure to ensure tasks were timely completed. Antonucci telephoned Poalillo to express his anger at the letter's contents. Antonucci believed Poalillo had mismanaged the project and jeopardized Specialty Flooring's relationship with Merck. The conversation ended with Antonucci terminating Poalillo's employment.[2]

Specialty Flooring promoted Keeble to Poalillo's former position. In July 2008, Keeble was also terminated after his sales figures decreased substantially. Specialty Flooring has not hired a replacement for Keeble.

**DISCUSSION**

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 120 S. Ct. 2658, 2677 (2009) (citation and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (citation omitted).

To show his termination was the result of disparate treatment based upon age discrimination, Poalillo may prove his case by direct or indirect evidence.[3] A modified version of the familiar

---

[2] Subsequently, Specialty Flooring's vice president, Robert Tarabocchia Sr., formally informed Poalillo he was fired.

[3] Poalillo asserted two theories of liability under the ADEA in his Complaint – disparate treatment and disparate impact. In his brief opposing summary judgment, however, Poalillo abandoned his disparate impact claim.

*McDonnell Douglas* burden-shifting analysis is applied in indirect evidence cases.[4]  *See Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249 (3d Cir. 2002).  In order to make out a prima facie case of age discrimination using indirect evidence, a plaintiff must show he:

  (1) was a member of a protected class (i.e. he or she was forty years of age or older);
  (2) was qualified for the position at issue;
  (3) suffered an adverse employment action; and
  (4) was replaced by a sufficiently younger person, raising an inference of age discrimination.

*Id.* (citation omitted).  "After the plaintiff has established a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the employee's rejection.  If the defendant's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1992).  "Then, the plaintiff, since [h]e retains the ultimate burden of persuasion, must prove, by a preponderance of the evidence, that the defendant's proffered reasons were a pretext for discrimination." *Id.*  An ADEA plaintiff may not prove his claim with a mixed-motive theory.  "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343, 2351 (2009).

A plaintiff may prevail against a summary judgment motion without providing any more evidence of discrimination than supports his prima facie case if he can sufficiently discredit the defendant's proffered reasons for the adverse employment decision. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the

---

[4]*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action . . . ." *Id.* (citations omitted). "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 765 (citations, emphasis, and internal quotation marks omitted).

Poalillo has not offered any direct evidence of age discrimination, therefore the modified *McDonnell Douglas* burden-shifting analysis, as articulated in *Anderson*, applies. Poalillo has made out a prima facie case of age discrimination because (1) Poalillo was a member of the protected class at age 52; (2) Poalillo was qualified for the division manager position; (3) Poalillo's termination was an adverse employment action; and (4) Poalillo was replaced by Keeble, age 27 at the time of Poalillo's termination.[5]

Specialty Flooring has satisfied its burden to produce legitimate, non-discriminatory reasons for Poalillo's termination. Antonucci, Poalillo's direct supervisor, testified he was disappointed in Poalillo's sales and profitability numbers, and Specialty Flooring's sales and profitability reports show Poalillo, and the division under his management, lagged behind other employees and divisions. Antonucci also testified the incident which prompted Poalillo's termination was Daross's letter complaining about Poalillo's management of a specific project. Antonucci testified he was very upset by this complaint because he believed Poalillo was not properly managing the project and was

---

[5]Specialty Flooring also concedes, for the purpose of its summary judgment motion only, Poalillo has made out a prima facie case of age discrimination.

thereby jeopardizing Specialty Flooring's relationship with an important client, and he fired Poalillo immediately thereafter.

Poalillo offers no evidence of age discrimination beyond his prima facie case. Rather, he argues Specialty Flooring's proffered legitimate reasons for his termination, namely, poor performance in the areas of sales, profitability, and project management, are not credible. To prevail against Specialty Flooring's summary judgment motion, he "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765 (citations, emphasis, and internal quotation marks omitted). This he cannot do.

Poalillo argues his positive work history with Specialty Flooring casts doubt on Specialty Flooring's assertion that Poalillo was fired for poor job performance. He argues an employer's refusal to consider good past performance of an employee before taking adverse employment action is evidence of invidious discrimination, citing *Gunby v. Pennsylvania Electric Co.*, 840 F.2d 1108 (3d Cir. 1988). *Gunby* is inapposite because it is factually distinguishable. The *Gunby* court affirmed a jury verdict in favor of the plaintiff's race discrimination claim, where the only fault found in the plaintiff's nine-year employment record was a single unfavorable review, which the jury could have found was a sham under the case's circumstances. *Id.* at 1116-19. As an initial matter, Poalillo offers no evidence suggesting excellent job performance other than his own testimony. Specialty Flooring, however, has offered sales and profitability reports which show Poalillo consistently underperformed compared to his peers throughout the year he was terminated. Though Poalillo argues the Merck project problems which inspired Daross's letter were not his fault, Poalillo

does not assert Specialty Flooring fabricated the letter or otherwise embellished the incident.[6] On the contrary, Poalillo admits Antonucci was genuinely angered by the letter when he called Poalillo to discuss its contents.

Poalillo also argues other younger employees were not subject to the same exacting standards to which he was subject.[7] Poalillo points to an incident in which a younger employee, Greg Moench, was reprimanded twice for misusing company computers, but was not terminated. Poalillo asserts he was fired without any warning, and he argues this incident shows a more stringent standard was applied to him. A plaintiff may establish pretext by showing similarly situated employees who were not members of the protected class at issue were not subject to similar adverse employment action. *See Delli Santi v. CNA Ins. Co.*, 88 F.3d 192, 202 (3d Cir. 1996) (concluding the evidence of pretext was sufficient to support a verdict in favor of the plaintiff's age and sex discrimination claim where the defendant failed to "investigate, terminate or otherwise discipline any other employee" who appeared to commit the same offense for which the plaintiff was terminated). In this case, however, Poalillo cannot show pretext because Moench's misconduct, misuse of the company's computers, was entirely unlike the behavior for which Poalillo was terminated, low sales and profitability and

---

[6] Poalillo offers several reasons why problems with the Merck project were beyond his control, however, this Court is not an "arbitral board[] ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (alteration, citation, and internal quotation marks omitted).

[7] Poalillo also argues Specialty Flooring's failure to establish and follow a written disciplinary protocol suggests his firing was pretextual. Poalillo was an at-will employee, and Specialty Flooring was under no obligation to provide him with any kind of pre-termination process. *Cf. Clark v. Modern Group Ltd.*, 9 F.3d 321, 327 (3d Cir. 1993) ("Under Pennsylvania law, an at-will employee of a private sector employer 'can be terminated for good reason, bad reason, or no reason at all.'") (quoting *Nix v. Temple Univ.*, 596 A.2d 1132, 1135 (Pa. Super. Ct. 1991)).

poor project management. In fact, with respect to sales performance, Specialty Flooring applied the same standard to the younger Keeble, firing him after his sales dropped off.

Because Specialty Flooring has proffered legitimate, non-discriminatory reasons for Poalillo's termination and Poalillo has offered no evidence which creates a genuine issue of material fact regarding whether such reasons were a pretext for age discrimination, this Court will grant Poalillo's motion for summary judgment.

An appropriate order follows.